**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| LGBTQ+ Real Estate Alliance, a Minnesota non-profit company,<br><br>                Plaintiff,<br><br>vs.<br><br>Ryan A. Weyandt,<br><br>                Defendant. | Case File: _____<br><br>**COMPLAINT** |

---

## INTRODUCTION

Plaintiff LGBTQ+ Real Estate Alliance, a Minnesota non-profit company ("Plaintiff" or "Alliance"), brings this action to recover its damages and injunctive relief, caused by the wrongful conduct of Defendant Ryan A. Weyandt ("Defendant"), and states and allege as follows:

1.  Defendant violated and continues to violate the Minnesota Uniform Trade Secrets Act (Minn. Stat. § 325C.01, *et. seq.*) and the Federal Defend Trade Secrets Act (18 U.S.C. § 1836, *et. seq.*) (collectively "Trade Secrets Acts") and other torts to the detriment of Plaintiff.

2.  Plaintiff discovered Defendant's unlawful actions and immediately sent a cease and desist letter and subsequently commenced this action to obtain a Temporary Restraining Order and seek damages and other financial remedies as a result of Defendant's unlawful conduct.

## PARTIES

3. Plaintiff LGBTQ+ Real Estate Alliance is a Minnesota non-profit company with a registered office address of 1121 Smith Avenue S., St. Paul, MN 55118.

4. Defendant Ryan A. Weyandt is an individual and, upon information and belief, resides in the State of Minnesota with a last known address of 14217 Footbridge Way, Apple Valley, MN 55124.

## JURISDICTION AND VENUE

5. Pursuant to 18 U.S.C. § 1836(c), the Court has subject matter jurisdiction over this action because Plaintiff is bringing a claim for violation of the Defend Trade Secrets Act (18 U.S.C. § 1832) and the Stored Wire and Electronic Communications Act (18 U.S.C. § 2701).

6. Venue is appropriate in this district pursuant to 28 U.S.C. § 391(b) because a substantial part of the events or omissions giving rise to the claim occurred in Minnesota, including, but not limited to, Defendant stealing trade secrets from Plaintiff, which is a Minnesota non-profit company.

7. This Court has personal jurisdiction over Defendant because Defendant engaged in tortious conduct that harmed Plaintiff in Minnesota, most of the confidential information and trade secrets that Defendant has misappropriated was created in Minnesota, are housed on servers maintained in Minnesota, and were therefore taken from Minnesota.

## FACTUAL ALLEGATIONS

8. The Alliance was incorporated as a 501(c)(6) nonprofit corporation on June 23, 2020.

9. Alliance maintains chapters throughout the United States that connects potential LGBTQ+ homeowners with LGBTQ+ real estate professionals, including real estate agents, lenders, banks, and title companies.

10. Among other things, Alliance maintains a newsletter that operates as the key point of contact and information hub for Alliance and its community.

11. Alliance's newsletter ("Customer List") includes over 10,000 LGBTQ+ and industry influencers, corporate executives, association executives, leaders, agents, professionals, potential buyers and sellers, and other key industry contacts and customers.

12. Over the past 4.5 years, Alliance developed a strong reputation throughout the industry and developed the Customer List.

13. Only Alliance's employees, staff, and Board have access to its Customer List and knowledge of the names listed on the Customer List.

14. Alliance uses its newsletter and Customer List to generate revenue.

15. Through the Customer List, Alliance sells membership from profiles in a national directory that generates leads from LGBTQ+ homebuyers, annual partnerships, corporate partnerships, and ally associations that sponsor local chapters.

16. Alliance is the sole national source that connects LGBTQ+ real estate professionals with LGBTQ+ community of homebuyers and sellers.

17. Between January 2021, and December 3, 2024, Defendant served as Alliance's Chief Executive Officer ("CEO").

18. On December 3, 2024, Defendant formally resigned from Alliance, citing personal reasons, including struggles with addiction and/or dependency.

19. On December 19, 2024, Justin Ziegler ("Mr. Ziegler") memorialized Defendant's resignation via e-mail, and provided a Severance and Global Release Agreement to Defendant.

20. After Defendant resigned, Alliance asked Defendant to remove himself from Alliance's Accounts and to grant Alliance sole access to, but not limited to, Alliance's check book, Strip Portal, payroll, Bank of America business account and credit cards, Chase Bank account, Alliance's domains and URLs (www.realestatealliance.org and www.lgbtwplushomes.com), Wordpress, Shopify, Google console access, Constant contact, Zoom, Instagram, Wufoo, LinkedIn, Whova, YouTube, Vimeo, and Heartland payroll (collectively, "Alliance's Accounts").

21. Throughout 2025, Alliance made several attempts to transition the Alliance Accounts from Defendant to Alliance's employees.

22. Several employees and directors of Alliance, including Mr. Ziegler, Mary Mancera, ("Ms. Mancera"), Tommie Wehrle ("Ms. Wehrle"), and Richard Woods ("Mr. Woods"), requested that Defendant return the Alliance Accounts back to Alliance's control.

23. Ms. Mancera is Alliance's interim CEO; Mr. Ziegler is Alliance's National President and Board Chair; Ms. Wehrle is Alliance's National Vice President and President

4

Elect; and Mr. Woods is Alliance's Board Member, 2026 Vice President, and President Elect.

24. Between January 2025 and June 2025, Defendant promised to cooperate with Alliance's requests. Despite repeated promises, Defendant failed to cooperate.

25. On June 25 and 26, 2025, Defendant, among other things: (1) unlawfully took control of Alliance's e-mail server and Customer List and e-mailed Alliance's entire Customer List that he was taking "emergency fiduciary oversight of [Alliance]" because "Alliance is currently in a state of collapse;" (2) deactivated several of Alliance's employees and directors' accounts; (3) threatened to take adverse action to Alliance utilizing Alliance's Accounts; and (4) edited and removed key information from Alliance's website.

26. On June 25, 2025, Defendant unlawfully took control of Alliance's Customer List and sent an e-mail to Alliance's entire Customer List, stating that he had "resumed emergency fiduciary oversight of [Alliance]" because "Alliance is currently in a state of collapse."

27. Defendant further claimed that "the board has lost quorum, key governance protocols have failed, financial recordkeeping is inconsistent, and individuals without lawful authority are acting in leadership roles."

28. Defendant's June 25, 2025 e-mail is false and threatens to undermine Alliance's reputation and credibility to its customers, and in its industry.

29. Defendant's June 25, 2025 e-mail has caused damage to Alliance and will continue to cause damage to Alliance.

30. On June 25, 2025, Defendant took control of and locked Mr. Ziegler, Ms. Mancera, and Mr. Cruz out of their Alliance company e-mail accounts.

31. On information and belief, Defendant has control of and can access all e-mail accounts belonging to Alliance's employees and directors.

32. On June 25, 2025, Defendant e-mailed Alliance's Board of Directors an "Emergency Notice to all Individuals Claiming Board or Leadership Authority" and stated that Defendant was "lawfully resuming fiduciary stewardship."

33. On June 26, 2025, Defendant e-mailed the Board a "Summary of Allegations and Violations." Defendant's e-mail alleged that Alliance's Board breached their fiduciary duties and overstepped their authority. Defendant did not (and does not) have the authority to "lawfully resum[e] fiduciary stewardship" as he contends.

34. On June 27, 2025, Alliance, through the undersigned counsel, sent Defendant a Cease and Desist Letter demanding that Defendant "immediately return control of all Alliance accounts and property to the Board and cease and desist from any further interference with or attempt to exert control over Alliance property." Defendant did not respond.

35. Between June 27, 2025, and June 30, 2025, Defendant removed the "Join" feature from Alliance's website, which prevents potential customers from joining Alliance's community and Customer List. Defendant's actions prevented at least one potential customer from joining Alliance's Customer List.

## COUNT I
## VIOLATIONS OF TRADE SECRETS ACTS
### (Minn. Stat. § 325C.01, *et. seq.* and 18 U.S.C. § 1836, *et. seq.*)

36. Plaintiff restates and incorporates all paragraphs of this Complaint as if fully restated herein.

37. The Minnesota Uniform Trade Secrets Act ("MUTSA") defines a trade secret as: "information, including a formula, pattern, compilation, program, device, method, technique, or process, that derives independent economic value… and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

38. A party misappropriates another's trade secret when they acquire the trade secret by improper means or use the trade secret of another with their consent. Minn. Stat. § 325C.01, subd. 3.

39. 18 U.S.C. § 1836 provides a private right of action to the owner of a trade secret that it misappropriated and used in interstate commerce.

40. 18 U.S.C. § 1839(3) defines a "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information… if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives economic value."

41. 18 U.S.C. § 1839(5) defines "misappropriation" as "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who—(i) used improper means to acquire knowledge of the trade secret; (ii) at the time of disclosure or use, knew or had reason to

know that the knowledge of the trade secret was—(I) derived from or through a person who had used improper means to acquire the trade secret; (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or (iii) before a material change of the position of the person, knew or had reason to know that—(I) the trade secret was a trade secret; and (II) knowledge of the trade secret had been acquired by accident or mistake."

42. Under 18 U.S.C. § 1836(b)(3), a plaintiff may seek an injunction "to prevent any actual or threatened misappropriation."

43. Plaintiff's Customer List, which is comprised of over 10,000 LGBTQ+ and industry influencers, corporate executives, association executives, leaders, agents, professionals, potential buyers and sellers, and other key industry contacts and customers, constitutes a trade secret.

44. The Customer List is not generally known or readily ascertainable.

45. The Customer List provides a competitive advantage to Alliance.

46. The Customer List was gained and developed at the expense of Alliance.

47. Alliance intended to keep the Customer List confidential and took reasonable steps to maintain the secrecy of the Customer List.

48. Defendant misappropriated Plaintiff's trade secrets by using the trade secrets without the consent and approval of Plaintiff.

49. Due to Defendant's misappropriation of Plaintiff's trade secrets, Plaintiff is entitled to damages representing the actual loss caused by the misappropriation, unjust enrichment caused by the misappropriation, and/or a royalty for Defendant's unauthorized use of the trade secrets. (*See* Minn. Stat. § 325C.03(a) & 18 U.S.C. § 1836(b)(3)).

50. Due to Defendants' willful and malicious misappropriation of Plaintiff's trade secrets, Plaintiff is entitled to exemplary damages.

51. Plaintiff is entitled to injunctive relief as a result of Defendant's misappropriation of Plaintiff's trade secrets.

52. Plaintiff has suffered and will continue suffer financial damages as a result of Defendant's actions.

53. As a result of Defendant's misappropriation of trade secrets, Plaintiff has suffered and will continue to suffer damages and is entitled to compensation in the amount to be determined at trial, but believed to be in excess of $50,000.00.

## COUNT II
## VIOLATION OF STORED WIRE AND ELECTRONIC COMMUNICATIONS ACT
## (18. U.S.C. § 2701)

54. Plaintiff restates and incorporates all paragraphs of this Complaint as if fully restated herein.

55. A party violates the Stored Wire and Electronic Communications Act ("SCA"), 18 U.S.C. 2701, when: (1) they intentionally access a facility without authorization through which an electronic communication is provided; **or** (2) intentionally

exceeds his authorization to access such a facility, and prevents authorized access to an electronic communication.

56. A person violates the SCA if he/she accesses an electronic communication service, or obtains an electronic communication while it is still in electronic storage, without authorization.

57. The SCA allows a person who is "aggrieved by any violation of this chapter" to obtain "such relief as may be appropriate" in a civil cause of action, including injunctive relief.

58. Defendant violated the SCA by locking several employees and directors of Alliance out of their e-mail account.

59. On June 25, 2025, Defendant took control of and locked Mr. Ziegler, Ms. Mancera, and Mr. Cruz out of their Alliance company e-mail accounts.

60. Defendant further used Alliance's e-mail server to unlawfully access Alliance's Customer List *and* accessed Alliance's Website to remove key content.

61. Defendant violated the SCA by accessing Alliance's facilities (e-mail server, Customer List, and website) without authorization.

62. As a result of Defendant's violation of 18 U.S.C. § 2701, Plaintiff has suffered and will continue to suffer damages and is entitled to injunctive relief and compensation in the amount to be determined at trial, but believed to be in excess of $50,000.00.

## COUNT III
## CIVIL THEFT
### (Violation of Minn. Stat. § 604.14)

63. Plaintiff restates and incorporates all paragraphs of this Complaint as if fully restated herein.

64. Minn. Stat. § 604.14 provides a civil remedy for theft of property. The statute provides: "A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value stolen, whichever is greater."

65. Defendant's unlawful interference is unjustified and constitutes conversion and civil theft in violation of Minn. Stat. § 604.14.

66. As a result of Defendant's actions described herein, Plaintiff was deprived of the possession of its property.

67. Plaintiff holds a property interest in the Accounts, e-mail server, Customer List, and website.

68. Defendant deprived Plaintiff of its interest in the Accounts, e-mail server, Customer List, and website by accessing and utilizing the Accounts, e-mail server, website, and Customer List without Plaintiff's permission or authorization.

69. Plaintiff has suffered and will continue to suffer financial damages as a result of Defendant's actions.

70. Defendant is liable to Plaintiff for the value of the stolen property, presently believed to be in excess of $50,000.00, plus punitive damages of up to one hundred percent (100%) of the value of the stolen property.

11

## COUNT IV
## CONVERSION

71. Plaintiff restates and incorporates all paragraphs of this Complaint as if fully restated herein.

72. Common law conversion occurs when a person willfully interferes with the personal property of another without lawful justification, depriving the lawful possessor of use and possession.

73. Plaintiff holds a property interest in the Accounts, e-mail server, Customer List, and website.

74. Defendant deprived Plaintiff of its interest in the Accounts, e-mail server, Customer List, and website by accessing and utilizing the Accounts, e-mail server, website, and Customer List without Plaintiff's permission or authorization.

75. Plaintiff has suffered and will continue to suffer financial damages as a result of Defendant's actions.

76. As a result of Defendant's conversion, Plaintiff has suffered damages and is entitled to judgment in its favor and against Defendant in an amount to be determined, and believed to be in excess of $50,000.00.

## COUNT V
## INTRUSION UPON SECLUSION

77. Plaintiff restates and incorporates all paragraphs of this Complaint as if fully restated herein.

78. There are three elements of the tort of intrusion upon seclusion: (1) an intrusion; (2) that is highly offensive; and (3) into some matter in which a person has a legitimate expectation of privacy.

79. Defendant committed "an intrusion" because Defendant was not authorized to access Alliance's Accounts, Customer List, e-mail server, or website.

80. Defendant's intrusion was "highly offensive" considering the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion, as well as the intruder's motives and objectives, the setting into which the intruder intrudes, and the expectations of those whose privacy is invaded.

81. Alliance has a reasonable expectation of privacy in its Accounts, Customer List, e-mail server, and website.

82. As a result of Defendant's invasion of privacy, Plaintiff has suffered damages and is entitled to judgment in its favor and against Defendant in an amount to be determined, and believed to be in excess of $50,000.00.

### COUNT VI
### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

83. Plaintiff restates and incorporates all paragraphs of this Complaint as if fully restated herein.

84. Plaintiff had a reasonable expectation of economic advantage with customers via its Customer List, Accounts, e-mail server, and website.

85. Through his prior employment with Alliance as Alliance's CEO, Defendant had knowledge of Alliance's reasonable expectation of economic advantage.

86. Defendant intentionally interfered with Plaintiff's reasonable expectation of economic advantage and contracts through his actions as alleged in this Complaint, including but not limited to, accessing Alliance's Accounts, Customer List, e-mail server, and website, without permission or authorization, and taking actions detrimental to Alliance through his unauthorized access.

87. Had Defendant not interfered with Plaintiff's prospective economic advantage, it is reasonably probable that Plaintiff would have realized its prospective economic advantage and its contracts would have been fully performed.

88. As a result of Defendant's interferences, Plaintiff suffered damages.

89. At this stage, it is unclear how much Defendant's actions have affected or will affect Alliance's reputation and potential economic advantages. However, between June 27, 2025, and June 30, 2025, Defendant removed the "Join" feature from Alliance's website, which prevents potential customers from joining Alliance's community and Customer List. Defendant's actions prevented at least one potential customer from joining Alliance's Customer List.

90. Plaintiff has suffered and will continue to suffer financial damages as a result of Defendant's actions.

91. As a result of Defendant's tortious interference, Plaintiff has suffered damages and is entitled to judgment in its favor and against Defendant in an amount to be determined, and believed to be in excess of $50,000.00.

## COUNT VII
## INJUNCTIVE RELIEF

92. Plaintiff restates and incorporates all paragraphs of this Complaint as if fully restated herein.

93. Defendant's unlawful conduct has and will continue to cause irreparable harm to Plaintiffs, unless enjoined.

94. As a result of Defendant's unlawful conduct, Plaintiff is entitled to preliminary and permanent injunctive relief.

95. Pursuant to 18 U.S.C. § 1836(b)(3) and Minn. Stat. § 325C.01., *et seq.,* Plaintiff is entitled to injunctive relief.

## COUNT VIII
## DECLARATORY RELIEF

96. Plaintiff restates and incorporates all paragraphs of this Complaint as if fully restated herein.

97. A justiciable controversy exists as to whether Defendant is legally entitled to "resum[e] fiduciary stewardship" as Defendant claimed on June 25, 2025.

98. Plaintiff has legal rights and interests which are complicated by Defendant's wrongful actions as described herein.

99. Plaintiff's legal rights under Minnesota Law are capable of and in need of protection from the illegal actions of Defendant.

100. Due to Defendant's actions described herein, Plaintiff is entitled to declaratory judgement from the Court that Defendant is not entitled to: (1) "resume[] emergency fiduciary oversight of [Alliance];" (2) take any action related to Alliance or its

customers, including by "stabilizing [Alliance's] systems, protecting member and sponsor data, and initiating a lawful audit process" as Defendant stated he intends to do; and (3) prevent Alliance from engaging in "further financial activity."

101. Due to Defendant's actions described herein, Plaintiff is entitled to declaratory judgment from the Court that Defendant does not have any interest in Alliance, and cannot undertake any actions related to Alliance that are otherwise the responsibility of Alliance's employees, executives, or board of directors.

**WHEREFORE**, Plaintiff LGBTQ+ Real Estate Alliance, a Minnesota non-profit company, requests entry of judgment in its favor on all claims against Defendant Ryan A. Weyandt, as follows:

1. Awarding Plaintiff all actual and compensatory damages on its claims against Defendant, in amounts to be proven;

2. Granting Plaintiff an injunction against Defendant pursuant to Minn. Stat. § 325C.02(a) and 18 U.S.C. § 1836(b)(3);

3. Awarding Plaintiff its attorneys' fees, costs, and disbursements incurred herein;

4. Awarding Plaintiff all pre-judgment and post-judgment interest as allowed by law; and

5. For such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action so triable.

Respectfully submitted,

**HELLMUTH & JOHNSON, PLLC**

Dated: July 1, 2025.

By: */s/Thomas H. Priebe*
Thomas H. Priebe, ID #0395187
David G. Hellmuth, ID #0229131
John P. Golbranson, ID #0505663
8050 West 78th Street
Edina, MN  55439
Telephone:  (952) 941-4005
Facsimile:  (952) 941-2337
E-mail: tpriebe@hjlawfirm.com
          dhellmuth@hjlawfirm.com
          jgolbranson@hjlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

10618059 – 38572.0001