# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| LGBTQ+ Real Estate Alliance,<br><br>Plaintiff,<br><br>v.<br><br>Ryan A. Weyandt,<br><br>Defendant. | **Case No. 0:25-cv-02745-ECT-ECW**<br><br>DEFENDANT'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE COUNTERCLAIMS |

PLEASE TAKE NOTICE that Defendant Ryan A. Weyandt, appearing pro se, hereby moves the Court pursuant to Federal Rules of Civil Procedure 13(a), 15(a)(2), and 16(b)(4) for an Order granting leave to file counterclaims against Plaintiff LGBTQ+ Real Estate Alliance.

The proposed counterclaims assert six causes of action arising from the same employment relationship and related transactions that form the basis of Plaintiff's Complaint: (1) Breach of Employment Contract -- Unauthorized Wage Reduction; (2) Breach of Employment Contract -- Failure to Pay Earned Severance; (3) Wrongful Termination and Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Unjust Enrichment; (5) Violation of the Minnesota Payment of Wages Act, Minn. Stat. §§ 181.01 et seq.; and (6) Conversion and Wrongful Withholding of Employee Records.

This motion is supported by the accompanying Memorandum of Law, the Declaration of Ryan A. Weyandt with exhibits, the Proposed Counterclaims attached hereto, the pleadings and record in this action, and such other matters as may be presented to the Court.

**HEARING**

This motion is scheduled for hearing on **June 5, 2026, at 1:30 P.M.**, before the Honorable Elizabeth Cowan Wright, United States Magistrate Judge, in **Courtroom 3C**, Warren E.

Burger Federal Building and United States Courthouse, 316 N. Robert Street, St. Paul, Minnesota 55101.

**MEET-AND-CONFER CERTIFICATION**

Pursuant to Local Rule 7.1(a), the undersigned certifies that he contacted counsel for Plaintiff, Thomas Priebe, Hellmuth & Johnson PLLC, via email on May 5, 2026, to meet and confer regarding the relief sought in this motion. As of the time of this filing, Plaintiff's counsel has not consented to the filing of counterclaims. Defendant therefore files this motion seeking leave of Court.

Dated: May 6, 2026

Respectfully submitted,

/s/ Ryan A. Weyandt

---

**Ryan A. Weyandt**
Pro Se Defendant
14217 Footbridge Way
Apple Valley, MN 55124
(952) 356-2849
ryan.weyandt1@gmail.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| LGBTQ+ Real Estate Alliance,<br><br>Plaintiff,<br><br>v.<br><br>Ryan A. Weyandt,<br><br>Defendant. | **Case No. 0:25-cv-02745-ECT-ECW**<br><br>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR LEAVE TO FILE COUNTERCLAIMS |

## I. INTRODUCTION

Defendant Ryan A. Weyandt respectfully moves this Court for leave to file counterclaims against Plaintiff LGBTQ+ Real Estate Alliance (the "Alliance"). The proposed counterclaims arise from the same employment relationship and course of dealing that Plaintiff has placed squarely at issue in its Complaint. Plaintiff seeks to hold Weyandt liable for acts taken during and after his tenure as founding Chief Executive Officer. Plaintiff cannot simultaneously litigate the terms and consequences of that employment relationship while blocking Weyandt from asserting his own compulsory claims arising from it.

The factual predicate for each counterclaim was developed and crystallized through the discovery process: Weyandt's deposition (March 24, 2026), the Alliance's document productions, third-party payroll records, and board-generated communications confirming the Alliance's deliberate decisions to reduce Weyandt's compensation without contractual authority and to deny him earned severance. Leave to file counterclaims should be freely granted under Rule 15, and good cause exists under Rule 16 because Weyandt acted diligently as soon as the evidentiary record supported each claim.

## II. FACTUAL BACKGROUND

## A. The Employment Relationship and Contract

Ryan Weyandt served as the founding Chief Executive Officer of the LGBTQ+ Real Estate Alliance from the organization's inception through early 2025 -- approximately four years of continuous service during which he built the Alliance from the ground up to nearly 4,000 members. Weyandt was employed pursuant to a written employment agreement last executed in 2023, which provided for an annual base salary of $135,000 and specified severance equal to one month of base compensation per year of service. That agreement auto-renewed by its terms absent written amendment.

## B. The Unauthorized Wage Reduction

Without a written amendment to the employment agreement and without Weyandt's written consent, the Alliance's board of directors unilaterally reduced Weyandt's compensation by approximately $25,000 to $30,000 annually. This reduction was effectuated through the payroll system without documentation of board approval or contractual authority. Weyandt's own retained employment counsel, during pre-litigation negotiations, received confirmation from Alliance counsel Zaylore Stout -- then acting on behalf of the Alliance -- that the board had made "a conscious decision" to reduce Weyandt's compensation. No written amendment was ever executed. No board resolution amending the compensation terms was produced in discovery.

## C. The Denial of Earned Severance

Weyandt's employment agreement expressly provided severance equal to one month of base compensation per year of service. At approximately four years of service, Weyandt was entitled to approximately four months of severance at $135,000 per year -- approximately $45,000. No severance was offered or paid. Pre-litigation negotiations conducted by Weyandt's

counsel confirmed that the Alliance acknowledged the existence of a severance obligation but declined to fulfill it. Contemporaneous emails from Weyandt's counsel confirm the Alliance agreed to a leave of absence arrangement -- "They agreed to the leave. They need to pay you" (email, February 4, 2025) -- yet no severance payment followed.

## D. Withholding of Employee Records

Following Weyandt's departure, the Alliance revoked his access to the Heartland payroll platform through which his employment records, pay stubs, W-2 forms, and PTO accrual data were maintained. Minnesota law obligates employers to provide employees with access to their own employment and wage records. The Alliance's revocation of Weyandt's Heartland credentials prevented him from accessing records documenting his own compensation history -- records directly at issue in this litigation.

## E. The Stripe 2FA Incident

On or about March 20, 2026 -- more than nine months after this lawsuit was filed -- Stripe's payment platform authenticated the Alliance's login attempt and routed a two-factor authentication code to Weyandt's personal cell phone ending in 2849. Weyandt immediately documented the incident and did not enter the verification code. This incident -- one of multiple instances of continued Alliance system contact routed to Weyandt -- directly contradicts Plaintiff's allegations that Weyandt's access to organizational systems was unauthorized and harmful, and is relevant to Weyandt's good-faith defense and to the Alliance's credibility as a plaintiff.

## F. Discovery Crystallized the Counterclaims

The evidentiary record supporting Weyandt's counterclaims was not fully assembled until the conclusion of fact discovery. Weyandt's deposition on March 24, 2026, the Alliance's

document productions, and third-party subpoena responses from Heartland Payroll and ADP (which maintained payroll records for 2021-2022 and 2023-2025, respectively) were necessary to document with specificity the compensation shortfalls, the absence of contractual authority for the wage reduction, and the failure to pay earned severance. Weyandt filed this motion promptly following the close of fact discovery on April 22, 2026.

## III. LEGAL STANDARD

### A. Compulsory Counterclaims -- Rule 13(a)

Federal Rule of Civil Procedure 13(a) requires a defendant to assert any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" or face potential forfeiture of that claim. Fed. R. Civ. P. 13(a)(1)(A). The Eighth Circuit construes the "transaction or occurrence" test broadly, encompassing all claims that bear a logical relationship to the same facts and circumstances underlying the opposing party's claims. See Burlington N. R.R. v. Strong, 907 F.2d 707, 711 (8th Cir. 1990). Because Plaintiff's Complaint is grounded in Weyandt's employment by and departure from the Alliance, Weyandt's claims for breach of his employment agreement, wrongful termination, and related relief plainly arise from the same transaction or occurrence.

### B. Leave to Amend -- Rule 15(a)(2)

Rule 15(a)(2) provides that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts in this Circuit apply a liberal amendment standard and deny leave only where there is a showing of undue delay, bad faith, undue prejudice to the opposing party, or futility. See Foman v. Davis, 371 U.S. 178, 182 (1962); Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989). None of those factors is present here.

## C. Good Cause to Modify Scheduling Order -- Rule 16(b)(4)

Where a scheduling order deadline has passed, a party seeking amendment must demonstrate "good cause" under Rule 16(b)(4). Good cause focuses on the diligence of the party seeking amendment, not on prejudice to the opposing party. See Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716-17 (8th Cir. 2008). A party establishes good cause when it shows that the need to amend "could not reasonably have been anticipated" before the scheduling order deadline. Id. at 717.

## IV. ARGUMENT

### A. The Proposed Counterclaims Are Compulsory Under Rule 13(a)

Each of the proposed counterclaims bears a direct logical relationship to the same employment relationship, departure, and course of dealing that Plaintiff has placed at issue. Plaintiff's Complaint alleges that Weyandt wrongfully accessed Alliance systems and misappropriated organizational assets during and after his tenure as CEO. Those allegations are inseparable from the contractual terms governing Weyandt's authority and compensation during that tenure. A claim that Weyandt exceeded his authority cannot be adjudicated without reference to what his authority actually was -- which in turn requires examination of the employment agreement and the parties' course of dealing. Courts applying the "logical relationship" test uniformly hold that employment contract claims arise from the same transaction or occurrence as claims alleging misconduct during that employment. See Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1 (1974); Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961).

The compulsory nature of these counterclaims provides an independent basis for granting leave regardless of the scheduling order deadline. To deny leave and later extinguish

compulsory claims through forfeiture would be a manifestly unjust result that Rule 13 was designed to prevent.

## B. Good Cause Exists Under Rule 16(b)(4)

Good cause is established here for three independent reasons. First, Weyandt acted with diligence. He did not have access to the payroll and compensation records necessary to support these claims with specificity until discovery produced those records. Third-party payroll providers ADP (2021-2022) and Heartland (2023-2025) held the operative records; the Alliance had revoked Weyandt's access to the Heartland platform entirely. Weyandt served third-party subpoenas and sought document production from Plaintiff throughout the discovery period. Only when those records were assembled could Weyandt fully quantify and document the compensation shortfall.

Second, the factual record supporting these claims was further developed at Weyandt's deposition on March 24, 2026 -- within the discovery period and well after the January 22, 2026 scheduling order amendment deadline. Deposition testimony and the documentary record produced thereafter confirmed the absence of any written board resolution authorizing the wage reduction and the existence of pre-litigation communications acknowledging the Alliance's obligation to pay severance.

Third, these are compulsory counterclaims. Courts applying Rule 16's good cause standard have recognized that the compulsory nature of a counterclaim weighs heavily in favor of finding good cause, because the alternative is permanent forfeiture of otherwise valid claims. See Pochiro v. Prudential Ins. Co. of Am., 827 F.2d 1246, 1250 (9th Cir. 1987). Weyandt's diligence in assembling the record and filing this motion promptly following the close of fact discovery on April 22, 2026, satisfies the good cause standard.

## C. Rule 15's Liberal Amendment Standard Independently Supports Leave

Even setting aside the compulsory nature of these claims and the good cause analysis, Rule 15's liberal standard independently compels a grant of leave. There is no bad faith: these counterclaims are grounded in documentary evidence, including W-2 records, employment agreements, payroll reports, and board communications. There is no undue delay: Weyandt filed this motion within weeks of fact discovery closing and months before the dispositive motion deadline of June 22, 2026, and the trial date of October 19, 2026. The proposed counterclaims are not futile: each states a cognizable legal claim supported by specific factual allegations.

## D. Plaintiff Will Suffer No Undue Prejudice

Prejudice in the Rule 15 context means something more than additional litigation expense -- it means unfair surprise or an inability to respond to the claims. See Foman, 371 U.S. at 182. There is no unfair surprise here. Plaintiff has been litigating the same employment relationship since mid-2025. Plaintiff has deposed Weyandt and received his document production. The facts underlying these counterclaims -- Weyandt's compensation terms, his severance entitlement, the wage reduction -- were known to the Alliance because the Alliance is the party that implemented the wage reduction and withheld the severance. Plaintiff cannot credibly claim surprise.

Furthermore, trial is not scheduled until October 19, 2026, and dispositive motions are not due until June 22, 2026. There is sufficient time in the existing schedule to address counterclaims without disruption. To the extent any targeted additional discovery is warranted, a brief, focused supplemental discovery period can be ordered without prejudicing the trial date.

## V. CONCLUSION

For the foregoing reasons, Defendant Ryan A. Weyandt respectfully requests that the Court grant leave to file the Proposed Counterclaims attached to this motion as Exhibit A. These claims are compulsory, timely, well-founded in the documentary record, and essential to a complete adjudication of the parties' dispute. Denying leave would result in permanent forfeiture of legitimate claims arising from the same core facts that Plaintiff has voluntarily put at issue.


Dated: May 6, 2026


Respectfully submitted,



/s/ Ryan A. Weyandt

_____

**Ryan A. Weyandt**
Pro Se Defendant
14217 Footbridge Way
Apple Valley, MN 55124
(952) 356-2849
ryan.weyandt1@gmail.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| LGBTQ+ Real Estate Alliance,<br><br>Plaintiff,<br><br>v.<br><br>Ryan A. Weyandt,<br><br>Defendant. | **Case No. 0:25-cv-02745-ECT-ECW**<br><br>DEFENDANT'S PROPOSED COUNTERCLAIMS (Exhibit A to Motion for Leave) |

**PRELIMINARY STATEMENT**

Defendant and Counterclaim-Plaintiff Ryan A. Weyandt ("Weyandt"), for his counterclaims against Plaintiff and Counterclaim-Defendant LGBTQ+ Real Estate Alliance ("the Alliance"), states as follows:

**PARTIES AND JURISDICTION**

1. Weyandt is an individual residing in Apple Valley, Minnesota.

2. The Alliance is a nonprofit corporation organized and operating principally in the United States, with national membership and organizational activities.

3. This Court has supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367, as the claims arise from the same employment relationship and course of dealing that is the subject of Plaintiff's Complaint already pending before this Court.

4. Weyandt demands a trial by jury on all counterclaims so triable.

**COMMON FACTUAL ALLEGATIONS**

5. Weyandt served as the founding Chief Executive Officer of the Alliance from approximately 2020 through early 2025, a period of approximately four years and four months.

6. During his tenure, Weyandt grew the Alliance from a nascent concept to a national organization with nearly 4,000 members, establishing its operational infrastructure, membership programs, and national industry partnerships.

7. Weyandt's employment was governed by a written Employment Agreement last executed in 2023 ("the Agreement"), which provided for an annual base salary of $135,000 and severance compensation equal to one month of base salary per year of service, among other terms. By its terms, the Agreement auto-renewed absent a written amendment signed by both parties.

8. Beginning in 2024, the Alliance's board of directors, without executing a written amendment to the Agreement and without Weyandt's written consent, unilaterally reduced Weyandt's compensation by approximately $25,000 to $30,000 per year. This reduction was not reflected in any executed contract amendment or board resolution produced in discovery.

9. Alliance counsel Zaylore Stout, acting on behalf of the Alliance during pre-litigation negotiations, communicated to Weyandt's retained employment counsel that the Alliance's board had made "a conscious decision" to reduce Weyandt's compensation. No written amendment was ever executed.

10. Weyandt's employment ended through a constructive leave of absence process. A contemporaneous email from Weyandt's employment counsel, dated February 4, 2025, confirms: "They agreed to the leave. They need to pay you."

11. No severance was offered to Weyandt at the time of his departure or at any point thereafter. At four-plus years of service at $135,000 per year, Weyandt's severance entitlement under the Agreement is approximately $45,000.

12. Following Weyandt's departure, the Alliance revoked his access to the Heartland payroll platform, preventing him from accessing his own employment records, pay stubs, W-2 forms, and paid-time-off accrual history.

13. On or about March 20, 2026, Stripe's payment platform -- which processes 100% of the Alliance's membership and event revenue -- routed a two-factor authentication verification code to Weyandt's personal mobile phone. This occurred more than nine months after this lawsuit was filed. Weyandt photographed the prompts and prepared a contemporaneous memorandum without entering the code.

## COUNT I

## BREACH OF EMPLOYMENT CONTRACT -- UNAUTHORIZED WAGE REDUCTION

14. Weyandt incorporates by reference all preceding paragraphs.

15. The Agreement constituted a valid, binding contract between Weyandt and the Alliance, supported by adequate consideration.

16. The Agreement provided for a base salary of $135,000 per year and could not be amended except by written instrument signed by both parties.

17. The Alliance unilaterally reduced Weyandt's compensation without a written amendment and without his consent, in direct breach of the Agreement's terms.

18. Weyandt performed all material obligations under the Agreement.

19. As a direct and proximate result of this breach, Weyandt suffered damages in the form of unpaid wages of approximately $25,000 to $30,000, plus interest, costs, and such other relief as the Court deems just.

## COUNT II

### BREACH OF EMPLOYMENT CONTRACT -- FAILURE TO PAY SEVERANCE

20. Weyandt incorporates by reference all preceding paragraphs.

21. The Agreement expressly provided severance compensation equal to one month of base salary per year of service, up to five months.

22. Weyandt served approximately four years and four months as CEO, entitling him to approximately four months of severance at $135,000 per year -- approximately $45,000.

23. The Alliance, despite acknowledging through counsel its obligation to pay, failed and refused to pay any severance.

24. As a direct and proximate result, Weyandt suffered damages of approximately $45,000, plus interest, costs, and such other relief as the Court deems just.

## COUNT III

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

25. Weyandt incorporates by reference all preceding paragraphs.

26. Minnesota law implies a covenant of good faith and fair dealing into every employment contract.

27. The Alliance's board of directors, acting in bad faith, reduced Weyandt's compensation without contractual authority, withheld earned severance despite acknowledging the obligation, and revoked Weyandt's access to his own employment records -- all while simultaneously using those records against him in the present litigation.

28. These acts, taken in concert, denied Weyandt the benefits of his employment bargain and constitute breach of the implied covenant.

29. Weyandt suffered economic and reputational damages as a proximate result of this breach, in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

30. Weyandt incorporates by reference all preceding paragraphs.

31. Weyandt conferred a substantial benefit on the Alliance through four-plus years of executive leadership, during which he built the organization from inception to nearly 4,000 members and established its operational infrastructure, revenue streams, and national partnerships.

32. The Alliance knowingly accepted and retained these benefits while simultaneously failing to compensate Weyandt at the agreed contract rate and withholding earned severance.

33. Under circumstances where the Alliance reduces compensation without authority, withholds severance, and then commences litigation against the very executive who built the organization, retention of the benefit is inequitable and unjust.

34. Weyandt is entitled to restitution in an amount to be proven at trial.

## COUNT V

## VIOLATION OF MINNESOTA PAYMENT OF WAGES ACT

## (Minn. Stat. §§ 181.01 et seq.)

35. Weyandt incorporates by reference all preceding paragraphs.

36. The Minnesota Payment of Wages Act obligates employers to pay employees all earned and promised wages in accordance with their employment agreements.

37. The Alliance reduced Weyandt's compensation without contractual authority and withheld earned severance in violation of Minn. Stat. § 181.03.

38. Under Minn. Stat. § 181.101, Weyandt is entitled to the unpaid wages, severance, and related compensation wrongfully withheld, together with statutory penalties, costs, and attorneys' fees to the extent applicable.

## COUNT VI

## CONVERSION AND WRONGFUL WITHHOLDING OF EMPLOYEE RECORDS

39. Weyandt incorporates by reference all preceding paragraphs.

40. Weyandt had a property interest in and a legal right of access to his own employment records, including pay stubs, W-2 forms, payroll history, and PTO accrual data maintained in the Heartland payroll platform.

41. The Alliance intentionally revoked Weyandt's Heartland access credentials following his departure, preventing him from obtaining records documenting his own compensation history.

42. Minnesota law entitles employees to access their own personnel and payroll records. The Alliance's revocation of that access -- particularly while simultaneously litigating claims premised on the same compensation history -- constitutes wrongful interference with Weyandt's property rights.

43. Weyandt suffered damages, including the cost of obtaining those records through alternative means and the litigation disadvantage flowing from delayed access.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaim-Plaintiff Ryan A. Weyandt respectfully requests that the Court enter judgment in his favor and against Plaintiff and Counterclaim-Defendant LGBTQ+ Real Estate Alliance, and award the following relief:

(a) Compensatory damages for unpaid wages of approximately $25,000 to $30,000;

(b) Compensatory damages for unpaid severance of approximately $45,000;

(c) Statutory damages, penalties, and costs under the Minnesota Payment of Wages Act;

(d) Restitution in equity under the unjust enrichment claim, in an amount to be proven at trial;

(e) Pre-judgment and post-judgment interest at the applicable legal rate;

(f) Costs of suit; and

(g) Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Weyandt demands a trial by jury on all counterclaims so triable. Fed. R. Civ. P. 38(b).

Dated: May 6, 2026

Respectfully submitted,

/s/ Ryan A. Weyandt

_____

**Ryan A. Weyandt**
Pro Se Defendant
14217 Footbridge Way
Apple Valley, MN 55124

(952) 356-2849

ryan.weyandt1@gmail.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| LGBTQ+ Real Estate Alliance,<br><br>Plaintiff,<br><br>v.<br><br>Ryan A. Weyandt,<br><br>Defendant. | **Case No. 0:25-cv-02745-ECT-ECW**<br><br>[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE COUNTERCLAIMS |

This matter is before the Court on Defendant Ryan A. Weyandt's Motion for Leave to File Counterclaims pursuant to Federal Rules of Civil Procedure 13, 15(a)(2), and 16(b)(4).

The Court, having reviewed the motion, the supporting Memorandum of Law, the Declaration of Ryan A. Weyandt, the proposed counterclaims, and all files, records, and proceedings in this action, and being duly advised in the premises:

**ORDERS:**

1. Defendant Ryan A. Weyandt's Motion for Leave to File Counterclaims is GRANTED.

2. Defendant shall file the Counterclaims attached as Exhibit A to his motion within seven (7) days of this Order.

3. Plaintiff shall answer or otherwise respond to the Counterclaims within twenty-one (21) days of service.

4. [Optional: The Court may order a brief, focused supplemental discovery period of _____ days limited to the subject matter of the counterclaims, to commence upon the filing of Plaintiff's responsive pleading.]

SO ORDERED.

Dated: _____, 2026

_____

**Hon. Elizabeth Cowan Wright**

United States Magistrate Judge

District of Minnesota